# EXHIBIT A
# State Documents

STATE OF SOUTH CAROLINA  ) IN THE COURT OF COMMON PLEAS FOR
            ) THE THIRTEENTH JUDICIAL CIRCUIT
COUNTY OF GREENVILLE   )

Calvin Barton, Denise Blackwell,  )  **2009-CP-23-5244**
Brian Brownlee, Shamika Cureton, )
Joseph Hopkins, LaToya Jamison, ) Case No.: 09 – CP – ____ – _____
Lisa Jamison, Terrance Johnson,  )
Kelly Pardue, and Pauline Warren )
            )  **COMPLAINT**
    Plaintiffs,     ) **(JURY TRIAL REQUESTED)**
            )
    vs.       )
            )
Columbia Farms, Inc.     )
            )
    Defendant.    )

    Plaintiffs, by and through their undersigned attorneys, complain against Defendant, Columbia Farms, Inc. as follows:

<strong>JURISDICTION AND VENUE</strong>

    1.  This is an action for violation of state and federal wage and hour laws by Plaintiffs who are residents of Greenville County and are former or current employees of Defendant Columbia Farms, Inc. Pursuant to decision, policy, and plan, Plaintiffs worked hours for which they were not paid and worked more than forty (40) hours per week but were not paid overtime pay.

    2.  Defendant Columbia Farms, Inc. is a South Carolina Corporation doing business in Greenville County.

    3.  This Court has jurisdiction of the state claims alleged herein, and of the Fair Labor Standards Act ("FLSA") claim per 29 U.S.C. § 216 (b).

    4.  Venue is proper in this County because Defendant's business facility is located in this County and a substantial part of the events and omissions given rise to the claims occurred in

1

this County. Presently and at all times, Defendant has conducted substantial, continuous and systematic commercial activities in this County.

## FACTS COMMON TO ALL PLAINTIFFS

5.      Defendant is an "employer" engaged in interstate commerce within the meaning of FLSA, 29 U.S.C. § 203. Defendant operates a chicken processing plant.

6.      Plaintiffs are "employees" within the meaning of the FLSA. Plaintiffs work on a production line, cutting and de-boning chickens. They work nine (9) hour shifts but are only paid for eight (8) hours as there are two alleged thirty (30) minute breaks during each shift.

7.      Defendant's managers, with the knowledge and consent of corporate management, systematically violated and continue to violate the FLSA by: a) failing to maintain accurate records of Plaintiffs' time; b) requiring Plaintiffs to spend in excess of fifteen (15) minutes each day donning and doffing protective gear and preparing for work before clocking in; c) docking Plaintiffs' wages for thirty (30) minute meal breaks when said breaks that are actually less than twenty (20) minutes long; d) regularly failing to pay Plaintiffs for non-meal breaks that are less than twenty (20) minutes in length, which breaks if added together each week would result in Plaintiffs working more than forty (40) hours per week; and e) failing to pay Plaintiffs overtime when Plaintiffs work more than forty (40) hours per week.

8.      Defendant requires Plaintiffs, after they have entered the building where they work and before clocking in, to walk down the stairs to the basement and stand in line to purchase necessary protective clothing and supplies such as cloth and rubber gloves, hair nets, face masks, ear plugs, aprons and arm sleeves. Cloth and rubber gloves only last for a few days as they are damaged during the deboning process, so it is often necessary for Plaintiffs to purchase additional protective gear several times a week. This protective gear must be purchased

2

on site and using Defendant's payment method. After purchasing protective gear, Plaintiffs walk to the break room, put their clothes in lockers, don cloth gloves, aprons, hair nets, rubber gloves and rubber sleeves, then walk upstairs to the production room before they can clock in. In the event Plaintiffs do not need to replace any piece of protective clothing on a particular day, they must nevertheless walk down these same stairs to get to the break room and don their protective gear before clocking in.

9.    Plaintiffs' exertions prior to clocking in are integral and indispensible to Defendant's business as protective clothing is necessary for the job of cutting chickens; the protective gear only lasts a few days before having to be replaced; and the protective gear can only be obtained from Defendant and paid for with a company debit card which tracks the money spent by Plaintiffs so it can be deducted by Defendant from Plaintiffs' wages.

10.    Plaintiffs are also routinely and wrongfully docked pay for breaks that are allegedly thirty (30) minutes in length, but in fact are less than twenty minutes and Plaintiff should be compensated for this time.

11.    After the work bell rings to start each of the two unpaid thirty (30) minute breaks, Plaintiffs have to remain at the conveyor belt until the last chicken passes them, perform "rework" (cutting pieces of chicken that they may have missed the first time the approximately ninety (90) birds per minute went by them on the conveyor belt), stand in line to wash their hands, wash their hands, remove their protective clothing and hang it up and then walk down the hall to be relieved of duty. Plaintiffs are then called by their supervisors before the alleged thirty (30) minute breaks end to don their protective clothing, and walk from the break room or outside to return to the production line. All of these physical exertions of washing, doffing and donning

3

protective gear, and moving away from the production room during breaks benefit the employer by avoiding contamination.

12.    The actual time during each of these two alleged thirty (30) minute break that Plaintiffs were and are relieved of their work duties is much less than thirty (30) minutes, and compensable.

13.    Defendant routinely fails to record at least one hour and fifteen minutes each day of time that Plaintiffs work and were this time recorded, Plaintiffs would work more than forty (40) hours per week and be entitled to overtime, which overtime pay they have not received.

14.    Additionally, Plaintiffs cannot leave the conveyor belt or the production room until the last chicken comes past them so they often do not finish their work and "rework" until 15 minutes past the time the shift ends.

15.    There are no clocks in the building where Plaintiffs work and Plaintiffs are not permitted to wear watches so they do not know when they actually start and stop working. However, Plaintiffs know what time it is when they leave the building and when they compare the time they leave the building with the time indicated on their pay checks, they know they have worked more time than is being recorded by Defendant.

16.    Plaintiffs have sustained substantial losses from Defendant's failure to pay them for the time spent donning and doffing their protective gear, failure to pay them for meal breaks less than thirty (30) minutes, failure to pay for breaks less than ten to fifteen minutes, and failure to pay overtime.

## SPECIFIC FACTS AS TO INDIVIDUAL PLAINTIFFS

17.    Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1-16 herein.

4

18.    Plaintiff Calvin Barton is a S.C. resident and has been employed by Defendant as a line de-boner at its facility in Greenville from May 18, 2009 to present.

19.    Plaintiff Barton is paid $9.16 per hour and scheduled to work a nine (9) hour shift.

20.    Plaintiff Barton is not paid for approximately one hour and fifteen minutes of compensable time worked each day.  As a result, Plaintiff Barton often works in excess of forty (40) hours each week and is not paid overtime compensation as required by federal law.

21.    Plaintiff Denise Blackwell is a S.C. resident and has been employed by Defendant as a line de-boner at its facility in Greenville from May 18, 2009 to present.

22.    Plaintiff Blackwell is paid $9.16 per hour and scheduled to work a nine (9) hour shift.

23.    Plaintiff Blackwell is not paid for approximately one hour and fifteen minutes of compensable time worked each day.  As a result, Plaintiff Hopkins often works in excess of forty (40) hours each week and is not paid overtime compensation as required by federal law.

24.    Plaintiff Brian Brownlee is a S.C. resident and was employed by Defendant as a line de-boner at its facility in Greenville from February 6, 2009 to May 25, 2009.

25.    Plaintiff Brownlee was paid $9.56 per hour and was scheduled to work a nine (9) hour shift.

26.    Plaintiff Brownlee was not paid for approximately one hour and fifteen minutes of compensable time worked each day.  As a result, Plaintiff Brownlee often worked in excess of forty (40) hours each week and was not paid overtime compensation as required by federal law.

27.    Plaintiff Shamika Cureton is a S.C. resident and has been employed by Defendant as a line de-boner at its facility in Greenville from November 11, 2009 to present.

5

28.    Plaintiff Cureton is paid $9.16 per hour and scheduled to work a nine (9) hour shift.

29.    Plaintiff Cureton is not paid for approximately one hour and fifteen minutes of compensable time worked each day. As a result, Plaintiff Cureton often works in excess of forty (40) hours each week and is not paid overtime compensation as required by federal law.

30.    Plaintiff Joseph Hopkins is a S.C. resident and has been employed by Defendant as a line de-boner at its facility in Greenville from February 13, 2009 to the present.

31.    Plaintiff Hopkins is paid $9.26 per hour and scheduled to work a nine (9) hour shift.

32.    Plaintiff Hopkins is not paid for approximately one hour and fifteen minutes of compensable time worked each day. As a result, Plaintiff Hopkins often works in excess of forty (40) hours each week and is not paid overtime compensation as required by federal law.

33.    Plaintiff LaToya Jamison is a S.C. resident and was employed by Defendant as a tender cutter at its facility in Greenville from May 6, 2009 to the May 21, 2009.

34.    Plaintiff Jamison was paid $8.76 per hour and was scheduled to work a nine (9) hour shift.

35.    Plaintiff Jamison was not paid for approximately one hour and fifteen minutes of compensable time worked each day. As a result, Plaintiff Jameson often worked in excess of forty (40) hours each week and was not paid overtime compensation as required by federal law.

36.    Plaintiff Lisa Jamison is a S.C. resident and was employed by Defendant as a line de-boner at its facility in Greenville from April 7, 2009 to June 2, 2009.

37.    Plaintiff Jamison was paid $8.66 per hour and was scheduled to work a nine (9) hour shift.

6

38.    Plaintiff Jamison was not paid for approximately one hour and fifteen minutes of compensable time worked each day. As a result, Plaintiff Jamison often worked in excess of forty (40) hours each week and was not paid overtime compensation as required by federal law.

39.    Plaintiff Terrance Johnson is a S.C. resident and has been employed by Defendant as a tender cutter at its facility in Greenville from May 19, 2009 to the present.

40.    Plaintiff Johnson is paid $8.76 per hour and scheduled to work a nine (9) hour shift.

41.    Plaintiff Johnson is not paid for approximately one hour and fifteen minutes of compensable time worked each day. As a result, Plaintiff Johnson often works in excess of forty (40) hours each week and is not paid overtime compensation as required by federal law.

42.    Plaintiff Kelly Pardue is a S.C. resident and has been employed by Defendant as a line de-boner at its facility in Greenville from January 21, 2009 to the present.

43.    Plaintiff Pardue is paid $9.26 per hour was scheduled to work a nine (9) hour shift.

44.    Plaintiff Pardue is not paid for approximately one hour and fifteen minutes of compensable time worked each day. As a result, Plaintiff Pardue often works in excess of forty (40) hours each week and is not paid overtime compensation as required by federal law.

45.    Plaintiff Pauline Warren is a S.C. resident and was employed by Defendant as a line de-boner at its facility in Greenville from February 20, 2009 to May 15, 2009.

46.    Plaintiff Warren was paid $8.66 per hour and was scheduled to work a nine (9) hour shift.

47.    Plaintiff Warren was not paid for approximately one hour and thirty minutes of compensable time worked each day. Plaintiff Warren missed more break time and worked longer

7

hours each day than other employees as she had to train the new hires. When the new hires missed cutting a chicken she had to put the chicken part aside and finish their work at the beginning of a break or at the end of the day.

48.    Plaintiff Warren often worked in excess of forty (40) hours each week and was not paid overtime compensation as required by federal law.

49.    Defendant's corporate management deliberately prohibited Plaintiffs from wearing watches while working and prohibited the placement of clocks on the walls in the workplace.

50.    There is no practical administrative difficulty that prohibits Defendant from recording uncompensated time.

51.    The aggregate amount of uncompensated time owed to these Plaintiffs is substantial.

52.    The Defendants regularly failed to compensate Plaintiffs for time worked.

53.    Upon information and belief, Defendant's corporate management deliberately trained, supervised, instructed and authorized managerial employees to engage in the above unlawful practices and ratified their actions afterwards in order to increase corporate profits and reduce the costs of labor.

## FIRST CAUSE OF ACTION
**(FLSA Wage and Overtime Violations, 29 U.S.C. §§ 201 *et seq.* as to all Plaintiffs)**

54.    Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1- 53 herein.

55.    Defendant required and continues to require Plaintiffs to purchase and/or don protective gear before beginning work, which protective gear is integral and indispensible to the

Plaintiff's job performance and only available for purchase from Defendant in a manner determined and controlled by Defendant.

56.    The protective gear Plaintiffs have to don prior to starting work benefits the Defendant.

57.    The time it takes Plaintiffs to purchase and don and doff their protective gear is not *de minimus*.

58.    Defendant regularly failed and continues to fail to count time spent by Plaintiffs purchasing and donning protective gear as compensable work time and, thus, Plaintiffs worked more time each shift than is reflected on their time cards.

59.    Defendant regularly failed and continues to fail to count time spent by Plaintiffs walking to and from the production line where they worked.

60.    Though there were two thirty (30) minute breaks dividing each nine hour shift, these periods of time were not uninterrupted as Plaintiffs had to wash their hands, doff and don their protective gear, and walk from and to the production line before being relieved of their job duties and able to start or end their breaks.  The process of washing, doffing and donning protective gear and walking to and from the production line used up a significant part of the two, thirty (30) minute breaks and, thus, said breaks were actually only several minutes long and constituted compensable working time which should have been reflected as such on Defendant's time records.

61.    Defendant regularly failed and continues to fail to count meal breaks of less than thirty (30) minutes as compensable time worked.  Were Defendant to count this time, on information and belief, it would have resulted in Plaintiffs working more than forty (40) hours per week and Plaintiffs being paid overtime.

9

62.     Defendant regularly failed and continues to fail to count breaks of less than twenty (20) minutes as compensable time worked.  Had Defendant counted this time, on information and belief, it would have resulted in Plaintiffs working more than forty (40) hours per week and being paid overtime.

63.     As Defendant failed to record the entire compensable time Plaintiffs worked each shift, Plaintiffs often worked in excess of forty (40) hours per week while employed by Defendant, and continue to do so.

64.     Defendant regularly failed and continues to fail to pay Plaintiffs for time worked in excess of forty (40) hours per week at time and a half rates for work, as required by the FLSA and also failed and continues to fail to keep accurate records as required by the FLSA.

65.     Plaintiffs seek damages in the amount of their respective unpaid wages and/or overtime compensation, liquidated (double) damages as provided by the FLSA for wage and overtime violations, attorneys fees and costs, prejudgment interest and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (S.C. Payment of Wages Violations, SC Code § 41-10-10 *et seq.* as to all Plaintiffs)

66.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1- 65 herein.

67.     S.C. Code § 41-10-30 (A) requires employers to notify employees at the time they are hired of the hours of work agreed upon.

68.     Plaintiffs were or are given a range of hours they would work each day by Defendant.  For example, Defendant Employer has represented the hours of work are "9 a.m. to 6, 7, 8 p.m." Additionally, Plaintiffs were told they would work nine (9)  hour shifts and be paid for eight (8) hours on the basis that Plaintiffs would have two thirty (30) minute breaks.  In fact,

10

Plaintiffs were not provided thirty (30) minute breaks and, therefore, Defendant Employer's notification of hours agreed upon was inadequate. Additionally, when Plaintiffs' hours of work are changed, Plaintiffs are not notified in writing of such changes to the terms of their employment.

69.    Defendant Employer's actions violate S.C. Code § 41-10-30 (A).

70.    Defendant Employer also failed and continues to fail to furnish Plaintiffs with an itemized statement showing their gross pay and deductions from wages for each pay period and also does not furnish Plaintiffs a statement of earnings and withholdings for wages deposited on Plaintiffs' behalf at financial institution(s).

71.    Defendant Employer's actions violates S.C. Code § 41-10-30 (C) and S.C. Code § 41-10-40 (B) and (C).

72.    As a result of Defendant's conduct described herein, Plaintiffs were not and are not paid all of the wages due and owed to them at the end of each week.

73.    Defendant Employer's failure to pay Plaintiffs the wages due to them violates S.C. Code § 41-10-40 (D).

74.    Additionally, as to Plaintiffs Brian Brownlee, Pauline Warren, LaToya Jamison, and Lisa Jamison who were terminated, Defendant failed to pay them all the wages they were at the time of their termination.

75.    Defendant Employer's failure to pay Plaintiffs Brian Brownlee, Pauline Warren, LaToya Jamison and Lisa Jamison wages they were entitled to at the time of separation of employment violates S.C. Code § 41-10-50.

76.     Upon information and belief, if any of the other six (6) named Plaintiffs are terminated before an order is issued in this suit, and Defendant Employer fails to pay them all the wages they are entitled to, S.C. Code § 41-10-50 will also be violated as to those Plaintiffs.

77.     Defendant Employer's intentional and willful failure to comply with various provisions of the South Carolina Payment of Wages Act has caused Plaintiffs to suffer actual damages and incur attorney fees and costs.

78.     Plaintiffs are entitled to treble damages, attorney fees and costs for damages as well as prejudgment and post judgment interest for the damages they incurred due to Defendant Employer's intentional violations of the South Carolina Payment of Wages Act.

## THIRD CAUSE OF ACTION
### (Invasion of Privacy Claim as to Plaintiff Lisa Jamison Only)

79.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1- 78 herein.

80.     Plaintiff Lisa Jamison's personal medical information is private.

81.     Plaintiff Lisa Jamison's co-workers have no legitimate interest in obtaining or reviewing medical information provided by her to Defendant Employer.

82.     Upon information and belief, Defendant Employer intentionally disclosed Plaintiff Lisa Jamison's private medical information through verbal discussions with Plaintiff Jamison's co-workers, and by disseminating Plaintiff Lisa Jamison's medical condition to other coworkers and persons who had no legitimate interest in Plaintiff's private medical information.

83.     Defendant Employer has wrongfully invaded Plaintiff Lisa Jamison's privacy and Plaintiff Jamison has suffered actual damages, including emotional distress, as a result of Defendant Employer's wrongful actions.

12

## FOURTH CAUSE OF ACTION
### (Retaliation in violation of S.C. Code § 41-1-80 as to Plaintiff Lisa Jamison Only)

84.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1- 84 herein.

85.     Plaintiff Lisa Jamison was wrongfully terminated by Defendant Employer June 2, 2009 after she suffered a workers' compensation accident, and was returned to work by her physician light duty.

86.     Plaintiff Lisa Jamison filed a workers' compensation claim, and Defendant Employer had knowledge of the claim and her medical restrictions.

87.     Defendant Employer wrongfully terminated Plaintiff Lisa Jamison while she was working light duty on the pretext she was taking too many breaks, though her medical restrictions required she take breaks as needed.

88.     Defendant Employer told Plaintiff Lisa Jamison it did not believe she had injured her neck in a fall at work; falsely accused her of failing a drug test after test results indicated she was taking prescription drugs prescribed by her treating physician; and thereafter required Plaintiff Lisa Jamison to perform repetitive manual work when her medical restrictions prohibiting repetitive manual activity, all in an attempt to force Plaintiff Lisa Jamison to quit.

89.     Defendant Employer fired Plaintiff Lisa Jamison when she refused to quit.

90.     Defendant Employer's stated reason for Ms. Jamison's termination is false.

91.     Defendant Employer terminated Plaintiff Lisa Jamison in retaliation for her filing a workers' compensation claim.

92.     Plaintiff Lisa Jamison has suffered damages as a consequence of her wrongful termination, and per S.C. Code § 41-1-80 is seeks actual damages in the form of lost wages, prejudgment interest and post judgment interest.

13

**WHEREFORE,** having fully stated its claims against the Defendant, the Plaintiffs pray for actual damages, liquidated and/or treble damages, attorneys' fees and costs, prejudgment and post judgment interest and such other and further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

**FOSTER LAW FIRM, L.L.C.**

*nancy Bloodgood*

Nancy Bloodgood, SC Bar No.: 6459
3875 Faber Place Drive, Suite 204
North Charleston, SC 29405
Telephone: (843) 744-7828
Facsimile: (843) 577-0434
Email: nbloodood@fosterfoster.com

Robin Foster, SC Bar No.: 2093
PO Box 2123
Greenville, SC 29602
Telephone: (843) 242-6200
Facsimile: (864) 233-0290
Email: rfoster@fosterfoster.com

Attorneys for Plaintiff

Charleston, South Carolina
Date: *6-18-09*

14

STATE OF SOUTH CAROLINA               )    IN THE COURT OF COMMON PLEAS IN
                                      )    THE THIRTEENTH JUDICIAL CIRCUIT
COUNTY OF GREENVILLE                  )

Calvin Barton, Denise Blackwell,      )
Brian Brownlee, Shamika Cureton,      )    Case No.: 09-CP **2009-CP-23- 5244**
Joseph Hopkins, LaToya Jamison,       )
Lisa Jamison, Terrance Johnson,       )
Kelly Pardue, and Pauline Warren      )             **SUMMONS**
                                      )
              Plaintiffs,             )
                                      )
v.                                    )
                                      )
Columbia Farms, Inc.                  )
                                      )
              Defendant.              )

TO THE DEFENDANT ABOVE NAMED:

      You are hereby summoned and required to answer the Complaint in this action, a

copy of which is herewith served upon you, and to serve a copy of your answer to the

Complaint to the subscriber at **Foster Law Firm, 3875 Faber Place Drive, Suite 204,**

**North Charleston, South Carolina, 29405,** within thirty (30) days after the service hereof,

exclusive of the day of such service. If you fail to answer the Complaint within that time,

the Plaintiff will apply to the Court for the relief demanded in the Complaint and a judgment

by default will be rendered against you.




                        **SIGNATURE BLOCK ON NEXT PAGE**

FOSTER LAW FIRM, L.L.C.

*Nancy Bloodgood*

Nancy Bloodgood, SC Bar No.: 6459
3875 Faber Place Drive, Suite 204
North Charleston, SC  29405
Telephone: (843) 744-7828
Facsimile: (843) 577-0434
Email: nbloodood@fosterfoster.com

Robin Foster, SC Bar No.: 2093
PO Box 2123
Greenville, SC 29602
Telephone: (843) 242-6200
Facsimile: (864) 233-0290
Email: rfoster@fosterfoster.com

Attorneys for the Plaintiffs


Charleston, South Carolina
Date: _6-18-09_

STATE OF SOUTH CAROLINA                    ) IN THE COURT OF COMMON PLEAS FOR
                                           ) THE THIRTEENTH JUDICIAL CIRCUIT
COUNTY OF GREENVILLE                       )


Calvin Barton, Denise Blackwell,           )
Brian Brownlee, Shamika Cureton,           )        Case No.: 2009-CP-23-5244
Joseph Hopkins, LaToya Jamison,            )
Lisa Jamison, Terrance Johnson,            )
Kelly Pardue, and Pauline Warren           )
                                           )     **PLAINTIFFS' FIRST SET OF**
                                           )   **INTERROGATORIES TO DEFENDANTS**
         Plaintiffs,                       )
                                           )
    vs.                                    )
                                           )
Columbia Farms, Inc.                       )
                                           )
_____Defendant._____)

TO: ATTORNEY FOR THE DEFENDANT:

         The Plaintiffs hereby require the Defendant, within thirty (30) days after service hereof,

to answer the Interrogatories hereinafter set forth, in accordance with the <u>South Carolina Rules</u>

<u>of Civil Procedure</u>, Rule 33.  In these Interrogatories, the term "party" is used to designate this

Defendant. These Interrogatories shall be deemed to continue until the time of the trial.


<u>INSTRUCTIONS</u>

         A.      Every Interrogatory herein shall be deemed a continuing Interrogatory, and you are

to supplement your answers promptly, if and when you obtain relevant information in addition to, or

in any way inconsistent with your initial answer to any such Interrogatory, in accordance with the

Rule 33 of the <u>South Carolina Rules of Civil Procedure</u>.

         B.      Should privilege be claimed as to any information requested herein, the answer

must, in each instance, state specifically the information sought, the privilege claimed, and the

ground on which the claim or privilege is based.  Should the Defendant be unable, for reasons other

than privilege, to provide the information requested, the answer must, in each instance indicate

1

specifically the information sought, the reason such information is presently unavailable, and an estimate of the time within which the information will be presented to the undersigned.

C.    If you object to any portion of an Interrogatory on the ground it seeks privileged information, identify all persons to whom such information has been disclosed, the nature of the privilege asserted, and the dates of any communications for which privilege is asserted.

D.    If you object to an Interrogatory on the ground that it is too broad, provide such information which is concededly relevant and available.

E.    If you object to an Interrogatory on the ground that to provide an answer would constitute an undue burden, provide such requested information as can be supplied without undertaking any undue burden.  For those portions of any Interrogatory to which you object or otherwise decline to answer, state the reasons for such objections, declination, or burden.

F.    When the Interrogatory asks for any "representations,", or "statements," the answer should contain the following:

1.    The speaker or originator of the statement or representation.

2.    The recipient of the statement or representation.

3.    All documents which evidence the statement or representation.

4.    The time, date and location of the statement or representation.

5.    If the statement or representation was not made to the Plaintiff, then describe with particularity how the Plaintiff discovered the representation or statement.

## DEFINITIONS

A.    As used in this request, the term "document" means any handwritten, typewritten, printed, recorded, or graphic matter, including all copies of the above, however produced or

2

reproduced, in the possession, custody, or control of Plaintiff or counsel and whether or not claimed to be privileged, including, but not limited to, correspondence, e-mails, electronic correspondence and documents, reports, meeting minutes, memoranda, notes, schedules, photographs, ledgers, requisitions, journals, books of account, contracts, drawings, blueprints, checks and diaries.

B.      "Identify" or "identity" when used in reference to a person, means state his or full name, his present or last known address, telephone number, and his present or last known position or business affiliation.

C.      "Describe" or "description", if used in reference to a person, means to identify each individual person and, when used in reference to a document, means to state the following as to each document:

      1.      Nature and contents.

      2.      Date.

      3.      Name, present address, and position of the author or signer.

      4.      The name, address, and position of the addressee, if any.

      5.      The present location, name, and present address and position of person or persons having custody.

## INTERROGATORIES

1.      Please state the full name and business address of each person answering these Interrogatories.

2.      Give the names and addresses of persons known to the party or counsel to have facts relevant to each Plaintiff's claims against Defendant and/or any fact relevant to Defendant's defenses and state with specificity:

      a. what is the factual knowledge possessed by each individual,

      b. how that knowledge was obtained, and

3

c. indicate whether or not written or recorded statements have been taken from each individual and indicate who has possession of such statement.

3.    Set forth a list of photographs, plats, sketches, or other prepared documents in possession of Defendant or Defendant's counsel that relate to the claims in the case; and if you will supply it without the necessity of a Motion, please attach a copy.

4.    List the names and addresses of any expert witnesses whom the party proposes to use as witnesses at the trial of the case.

5.    Identify each and every person (by name and address) responsible for the computation or payment of wages to each Plaintiff during the relevant time period each worked for Defendant. Please include in your answer the function each person performed with respect to employee wage payments and identify all documents that support your answer.

6.    Please identify by name and address the immediate supervisor of each Plaintiff and all other managers who were either directly or indirectly responsible for supervising each Plaintiff and the dates during which each supervisor had supervisory authority over each Plaintiff.

7.    To the extent you have not already done so, please describe in full all of the payment information for each Plaintiff including overtime pay, frequency of pay, deductions and method of payment.

8.    Describe in detail all categories or types of records that Defendant has kept that show or indicate hours worked by each Plaintiff including, but not limited to, time cards, time sheets and telephone and/or computer log-in records. This includes all records for which hours worked information can be obtained, even if that document or record is used for a purpose other than keeping time. Please include in your answer the names and job positions of all employees responsible for keeping such records.

4

9.    For each Plaintiff, please provide the dates of employment, job title, job duties and/or job description, work schedule, dates of employment, and reasons for any interruption in employment.

10.    Please state the seven day period which constitutes the work week for purposes of computing the pay of each Plaintiff, and any and all company policies which permit the deduction of any time from each Plaintiff's compensation or time worked.

11.    Identify any lawsuit or other judicial or administrative proceeding (including criminal) other than this law suit in which Defendant or its parent companies or subsidiaries has been involved, where there was an allegation that Defendant violated the Fair Labor Standards Act. For each, please include the parties involved, their legal counsel, the date the proceedings were initiated and terminated, the nature of the claims involved, the court or administrative agency, and the style of the case.  This includes, but is not limited to, a Department of Labor investigation regarding Defendant's possible violation of the Fair Labor Standards Act.

12.    Please describe with specificity all documents that reflect the terms of employment, including the hours worked, which were provided to each Plaintiff by Defendant at their time of hire and state when each document was provided.

**SIGNATURE BLOCK ON FOLLOWING PAGE**

5

FOSTER LAW FIRM, L.L.C.

*Nancy Bloodgood*

Nancy Bloodgood, SC Bar No.: 6459
3875 Faber Place Drive, Suite 204
North Charleston, SC  29405
Telephone: (843) 744-7828
Facsimile: (843) 577-0434
Email: nbloodood@fosterfoster.com

Robin Foster, SC Bar No.: 2093
PO Box 2123
Greenville, SC 29602
Telephone: (843) 242-6200
Facsimile: (864) 233-0290
Email: rfoster@fosterfoster.com

Attorneys for Plaintiff

Charleston, South Carolina

Date: ___6-25-09___

CERTIFICATE OF MAILING

I hereby certify that a copy of the foregoing pleading was mailed to all counsel of record in this proceeding this 25 day of June , 2009.

*Amanda Kramer*

6

STATE OF SOUTH CAROLINA     ) IN THE COURT OF COMMON PLEAS FOR
    ) THE THIRTEENTH JUDICIAL CIRCUIT
COUNTY OF GREENVILLE     )

Calvin Barton, Denise Blackwell,     )
Brian Brownlee, Shamika Cureton,     )     Case No.: 2009-CP-23-5244
Joseph Hopkins, LaToya Jamison,     )
Lisa Jamison, Terrance Johnson,     )
Kelly Pardue, and Pauline Warren     )     **PLAINTIFFS' FIRST SET OF**
    )     **REQUESTS TO PRODUCE**
       Plaintiffs,     )     **TO DEFENDANT**
    )
       vs.     )
    )
Columbia Farms, Inc.     )
    )
       Defendant.     )

TO: ATTORNEY FOR THE DEFENDANT:

      YOU WILL PLEASE TAKE NOTICE that the Plaintiffs hereby request, pursuant to Rule

34 of the <u>South Carolina Rules of Civil Procedure</u>, that the Defendant respond, within thirty (30)

days after the service hereof, to the following Requests and that the Defendant produce and permit

the Plaintiffs to inspect, copy, or photograph, at the offices of Plaintiffs' attorneys at 3875 Faber

Place Drive, Suite 204, North Charleston, South Carolina, 29405, each of the following documents

or things which may be in the possession, custody, or control of the Defendant or Defendant's

attorneys which constitutes or contains evidence relating to the claim or defense of the within cause:

DEFINITIONS

      The term "documents" or "things" means all writings of any kind, including the originals

and all non-identical copies, whether different from the original by reason of any notation made on

such copies or otherwise, including, without limitation, correspondence, memoranda, notes, diaries,

statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns,

summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers;

1

notations of any sort of conversations, telephone calls, meetings, or other communications; bulletins, printed matter, computer printouts, teletypes, fax, invoices, work sheets; all drafts, alterations, modifications, changes, and amendments of any of the foregoing graphic or aural records; representations of any kind, including, without limitation, photographs, charts, microfilm, videotape, recordings, and motion pictures; and electronic, mechanical, or electrical records or representations of any kind, including, without limitation, tapes, cassettes, discs, or other records.

The term "all documents" means every document as above defined known to Defendant, Defendant's agents or counsel, and each document which can be located or discovered by reasonably diligent efforts.

## DOCUMENTS REQUESTED

1.    Documents evidencing the legal formation of Defendant, including articles of incorporation, by laws, and certificates of standing or any other documents filed with the South Carolina Secretary of State.

2.    All documents and tangible things that constitute or contain matters relevant to this action or are material evidence or contain any matter or information that is reasonable calculated to lead to the discovery of material evidence including, but not limited to, documents Defendant has identified in response to Interrogatories or referred to or examined in preparing these responses.

3.    All documents including, but not limited to, any exhibits Defendant will or may use as exhibits at the trial of this action.

4.    All documents and items with respect to each expert witness you intend to call at trial evidencing, substantiating, referring or relating to:

      a.    Each expert's factual observation and opinions;

      b.    The subject matter on which each expert is expected to testify;

2

c.    A summary of the grounds of each opinion;

d.    All documents prepared by, provided to, relied upon, or reviewed by any such expert; all documents provided to you by each expert, including but not limited to reports, summaries, and correspondence;

e.    All documents provided to you by each expert, including but not limited to reports, summaries, and correspondence;

f.    Documents evidencing the hourly rate of each expert, the method of determining the amount to be paid to the expert, billing by the expert to date, the amount currently owed to the expert, and the amount paid to the expert to date; and

g.    A resume or curriculum vitae or other document summarizing each expert's qualifications within the field or discipline or area in which such expert is expected to testify.

5.    All documents of any kind or form whatsoever relating to the work product of any consulting expert whose work will provide the basis, in whole or in part, of the testimony of any expert who will testify as a witness in this case, including, but not limited to, documents evidencing, substantiating, referring or relating to:

a.    Each expert's factual observation and opinions;

b.    The subject matter on which each expert was consulted;

c.    A summary of grounds of each opinion;

d.    All documents prepared by, provided to, relied upon, or reviewed by any such expert;

e.    All documents provided to you by each expert, including but not limited to reports, summaries, and correspondence;

f.    Documents evidencing the hourly rate of each expert, the method of determining the amount to be paid by the expert, billing by the expert to date, the amount currently owed to the expert, the amount paid to the expert to date; and

3

g.    A resume or curriculum vitae or other documents summarizing each expert's qualifications within the field or discipline or area in which such expert was consulted.

6.    All treatises, rules, regulations, guidelines, statutes, policies or procedures and any other authoritative materials reviewed by any expert who will testify at trial.

7.    Any and all documents reflecting insurance policies and/or coverage Defendant has for any liability arising from employment practices, including all indemnification agreements, notice of claim(s) provided to any carriers and any subsequent communication concerning coverage, Employer Practices Liability Insurance, or other professional association policies, which may provide coverage for any liability arising from employment practices, including your response to any communications regarding "reservation of rights" by any such carrier.

8.    All employment records relating in any way to each named Plaintiff that were created prior to, during, and subsequent to Plaintiff's employment with Defendant including:

a.    records relating to the fact and duration of unemployment, records of workers' compensation accidents or claims, unemployment insurance, welfare, and application for assistance from any governmental agency because of unemployment or ill health;

b.    records relating to evaluation or appraisal of work performance, disciplinary action, or discharge;

c.    records relating to grievances or employment related complaints;

d.    all documents related to or referring in any way to each Plaintiff's discharge, termination, resignation or layoff, if applicable;

e.    all records, including timesheets, time cards, log sheets, and computer payroll data, indicating the number of hours that each Plaintiff worked during each day of Plaintiff's term of employment with Defendant;

f.    all records indicating each Plaintiff's job title(s) while employed by the Defendant;

4

g.   all records indicating each Plaintiff's job duties while employed by the Defendant;

h.   all pay records, including paychecks, pay stubs, debit card records, bank records, and IRS Form W-2, that indicate the rate of pay, method of compensation, and all payments made for hours worked by each Plaintiff;

i.   all pay records, including paychecks, pay stubs, debit card records, bank records, and IRS Forms W-2, that indicate the rate of pay, method of compensation, and all payments made for hours worked by each Plaintiff in excess of forty hours a week for each week during with that Plaintiff worked more than forty hours.

9.   The entire personnel file for each Plaintiff.

10.   All documents submitted or distributed by Defendant to each Plaintiff or to any other employee relating to Plaintiff's employment with Defendant;

11.   The personnel handbook or policy manual, and all documents reflecting Defendant's personnel practices and policies, including any manuals and departmental policies created or used by each Plaintiff's group or department supervisors pertaining to the management of Defendant's employees.

12.   Copies of all policies and procedures concerning orienting and training employees about overtime pay requirements, grievances, employee complaints, discrimination, anti-retaliation provisions and all other personnel policies and procedures governing conduct and behavior of your employees.  Please also provide documents evidencing the dates that said policies, procedures or guidelines were put into effect and the dates said policies were distributed to Defendant's employees.

13.   Any and all documents reflecting the policies, procedures and criteria for orienting, assigning, training, assisting, handling complaints, evaluation, transferring, giving supervisory

5

duties, promoting, increasing salary, disciplining, laying off, and discharging Defendant's employees in each Plaintiff's group or department.

14.    All sign-in sheets or any other date compilation that reflects the identify of all Defendant's employees in each Plaintiff's group or department that attended any seminars, orientation, or training during the time period in which Defendant employed each Plaintiff.

15.    Any and all documents pertaining to any meetings, discussions, encounters, and/or conversations, whether public or private, that each Plaintiff had with Defendant or Defendant's employees regarding contemplated or actual disciplinary action against any named Plaintiff, deductions from pay or overtime.

16.    Copies of any and all petitions, complaints, judgments or other documents filed in any lawsuits in which Defendant is named or was named a party in any capacity relating to violation of the FLSA (Fair Labor Standards Act), NC Wage & Hour Act, or the SC Payment of Wages Act.

**SIGNATURE BLOCK ON FOLLOWING PAGE**

6

FOSTER LAW FIRM, L.L.C.

*Nancy Bloodgood*

Nancy Bloodgood, SC Bar No.: 6459
3875 Faber Place Drive, Suite 204
North Charleston, SC  29405
Telephone: (843) 744-7828
Facsimile: (843) 577-0434
Email: nbloodood@fosterfoster.com

Robin Foster, SC Bar No.: 2093
PO Box 2123
Greenville, SC 29602
Telephone: (843) 242-6200
Facsimile: (864) 233-0290
Email: rfoster@fosterfoster.com

Attorneys for Plaintiff

Charleston, South Carolina

Date: ___6-25-09___

CERTIFICATE OF MAILING

I hereby certify that a copy of the foregoing pleading was mailed to
all counsel of record in this proceeding this _25_ day of
___June___, 20 09

*Amanda Kramer*

7

**STATE OF SOUTH CAROLINA**      ) IN THE COURT OF COMMON PLEAS
                                 )
**COUNTY OF GREENVILE**          ) Case No. 2009-CP-23-5244

CALVIN BARTON, DENISE BLACKWELL,    :
BRIAN BROWNLESS, SHAMIKA CURETON,   :
JOSEPH HOPKINS, LaTOYA JAMISON,     :
LISA JAMISON, TERRANCE JOHNSON,     :
KELLY PARDUE, and PAULINE WARREN.   :

      Plaintiffs,      :    **NOTICE OF FILING OF REMOVAL**
                         :
v.                       :
                         :
                         :
                         :
COLUMBIA FARMS, INC.     :
                         :
      Defendant.       :

Please take notice that Defendant Columbia Farms, Inc., has filed a Notice of Removal with the United States District Court for District of South Carolina, Columbia Division on the 17th day of July, 2009. With this filing, this action now stands removed from the Court of Common Pleas for Greenville County, State of South Carolina to the United States District Court for the District of South Carolina, Greenville Division. A copy of the Notice of Removal is attached hereto as Exhibit "1".

Respectfully submitted this 17th day of July, 2009.

Overlook Executive Park            **WIMBERLY LAWSON**
109 Laurens Road                   **DANIELS & FISHER, LLC**
Building 4, Suite A
Greenville, SC 29607 1860
864-242-9484                       By: _____
864-242-6833 facsimile                  M. Lee Daniels, Jr.
mldjr@wldf-law.com

     **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on 17 July, 2009, the foregoing NOTICE OF FILING OF

REMOVAL was served upon Plaintiffs' counsel via the U.S. Postal System, First Class

Mail, postage paid, properly addressed to:

> Nancy Bloodgood, Esq.
> 3875 Faber Place Drive
> Suite 204
> North Charleston, S.C.   29405
> Email:  nbloodood@fosterfoster.com

> Robin Foster, Esq.
> Post Office Box 2123
> Greenville, S.C. 29602
> Email:  rfoster@fosterfoster.com

This 17th  day of July, 2009.

M. Lee Daniels, Jr.